# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LANDON LANE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   No. 3:05-CV-127 |
| | )   (Phillips) |
| CITY OF LAFOLLETTE, *et al,* | ) |
| | ) |
|    Defendants. | ) |

## MEMORANDUM AND ORDER

This action involves a former city employee who alleges that he was wrongfully discharged due to his political affiliations. The defendants have filed motions for summary judgment as to plaintiff's complaint [Doc. 19 and Doc. 21]. The plaintiff has opposed these motions by filing responses, and the defendants have replied. For the reasons that follow, defendants' motions for summary judgment are **GRANTED in part** and **DENIED in part**.

## BACKGROUND

As the law requires, all disputed facts and inferences are resolved most favorably to the plaintiff. Furthermore, the Court merely provides an abridged summary of facts for the purposes of this opinion.

The plaintiff, Landon C. Lane ("Lane"), was hired as director of recreation for the City

1

of LaFollette, Tennessee on August 5, 2003. At the time Lane was hired, the mayor of the LaFollette was Lucy Lobertini ("Lobertini"). In November of 2004, Lobertini campaigned for re-election. Her challenger was defendant, Cliff Jennings ("Jennings"). Lane supported Lobertini despite Jennings' threats to Lane that he faced the loss of his position as city recreation director for supporting Lobertini if Jennings should win.

On November 2, 2004, Jennings won the mayoral election for the City of LaFollette. Shortly thereafter, on January 4, 2005, Jennings and two city councilmen, Robert Fannon ("Fannon") and Hansford Hatmaker ("Hatmaker"), voted to terminate Lane from his city employment. Lane was replaced with John Byrge, who had less education and experience than Lane as a city recreation director. Further, around the time of Lane's dismissal, Jennings stated to the local paper, the LaFollette Press, that some eliminations "may be political and [some] may not be."

Lane's recourse was to file suit against Jennings, Fannon, Hatmaker, as well as the City of LaFollette, Tennessee (collectively, "defendants"). In sum, plaintiff asserts that the defendants unlawfully and wrongfully terminated him due to his political affiliation in violation of the following: due process and property rights/interests in his position as director of recreation for the City of LaFollette as secured by the Fourteenth Amendment of the United States Constitution, 42 U.S.C.A. §1983; equal protection of laws as secured by the Fourteenth Amendment of the United States Constitution, 42 U.S.C.A. §1983; freedom of speech and association as secured by the First Amendment of the United States Constitution, 42 U.S.C.A. §1983; due process of law as secured by Article I,

2

Sections 8 and 9 of the Tennessee Constitution; and freedom of speech and association as secured by Article I, Section 19 of the Tennessee State Constitution.

Further, Lane relies upon LaFollette's charter and personnel policies. In particular, he cites Article VI, Section 1 of the Charter for the City of LaFollette, Tennessee, which reads as follows in relevant part:

> Appointment of Officers. The City Council shall elect by majority vote the following officers, City Clerk, City Attorney, City Judge, Treasurer, Chief of Police, Public Works Director, Street and Sanitation Operations Manager, Codes Enforcement Officer, Recreation Director, Animal Control Officer, and Fire Chief. Such officers shall serve at the pleasure of the City Counsel.
>
> All officers shall be elected with due regard to their qualifications and fitness and for the good of public service, without reference to race, age, color, creed, sex, or political party affiliation.
>
> It shall be unlawful for any candidate for office or any candidate for appointed office to give or promise any person, either directly or indirectly, any office, position, employment, benefit, or anything of value for the purpose of influence or obtaining the political support, aid, or vote of any person.

Lane also cites an excerpt from the employee handbook and personnel policies of the City of LaFollette, which states that "[n]o person in the service of the City of LaFollette or seeking admission thereto shall be appointed reduced, removed, or in any way favored or discriminated against because of political opinions or affiliations."

However, defendants assert that Lane's claims should be dismissed as a matter of law. The City of LaFollette has filed its motion for summary judgment based upon Lane's lack of property rights in his position as director of recreation. Further, the City of LaFollette

3

also asserts that since Lane's former position involved policy making for the city government, he could legally be discharged based upon his political affiliation. Lastly, the City of LaFollette asserts that plaintiff's claims for an alleged violations of the Tennessee Constitution should be dismissed as a matter of law, as no such private right of action is recognized in this state. Defendants Jennings, Fannon, and Hatmaker filed their motion for summary judgment denying that Lane was terminated for his political affiliation and also asserting that Lane is not entitled to any property rights in his former position. Alternatively, these defendants assert that, had they dismissed Lane on account of his political beliefs, it was in their right to do so since Lane held a policy making position. As another theory, these defendants assert qualified immunity stating that the right to not be dismissed as director of recreation for political affiliation is not clearly established.

In response and in addition to his complaint assertions that the policies and agreements surrounding his employment disallow termination upon political affiliation, Lane argues that he is not a policy maker as the defendants would have the Court believe. Lane then distinguishes his job/duties from the job/duties of a policy maker. Lane refers to the employee handbook and personnel policies of the City of LaFollette, which recites that the mayor and city council establish policy and enact ordinances and resolutions for the development of the entire community and that the city administrator is responsible for handling the administrative affairs of the city government. Lane argues that he did not make any policy or have discretion implementing the policies set by the mayor and city council. Lane states that anything he did had to be approved by the city administration and

4

the city council. Additionally, Lane argues that he did not advise the council on policies respecting the recreation department nor did he assist the city council in formulation or have discretion in implementing the policies for the recreation department. Also, although Lane would recommend employees for pay raises and promotions, he states that the ultimate decision rested with the city council members. Likewise, Lane states that the hiring of part-time and full-time employees was performed by the city administrator or by vote of the city council members. Accordingly, the plaintiff asserts that there is an issue of material fact and that this matter cannot be dismissed as a matter of law.

## **LAW APPLICABLE TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with

5

some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### **MOTION FOR SUMMARY JUDGMENT AND APPLICABLE LAW**

In this case, defendants Jennings, Fannon, and Hatmaker argue that they are entitled to qualified immunity. A court "first must decide whether plaintiff has stated a section 1983 claim against the individual defendants before addressing the qualified immunity question .... If [a plaintiff] has stated a claim, then [a court] must examine whether summary judgment is warranted on the grounds of qualified immunity." *Black v. Parke*, 4 F.3d 442, 445-46 (6th Cir. 1993).

*A.    Discharged for Political Affiliation*

In this case, defendants Jennings, Fannon, and Hatmaker contend that the plaintiff was not terminated for his political affiliation or activities.[1] The plaintiff bears the initial burden of proving that he was discharged because of his political affiliation. *Hall v. Tollett*, 128 F.3d 418, 423 (6th Cir. 1997). Additionally, in order to establish retaliation for engaging

---

[1] Defendant City of LaFollette does not contest plaintiff's assertion that he was discharged on account of his political affiliation and/or political activities.

6

in constitutionally protected activity, a plaintiff must prove: "(1) that plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Sowards v. Loudon County, Tenn.*, 203 F.3d 426, 431 (6th Cir. 2000). A court must determine whether the adverse employment action was motivated in substantial part by the plaintiff's constitutionally protected activity. *See Mattox v. City of Forest Park*, 183 F.3d 515, 520-21 (6th Cir. 1999). "If the plaintiff meets [his] burden, the burden then shifts to the defendants to prove that the employment decision would have been the same absent the protected conduct." *See Sowards,* 203 F.3d at 431.

In this matter, plaintiff engaged in his protected right to support a political candidate. Shortly thereafter, he experienced an adverse employment action, dismissal. Plaintiff has produced sufficient evidence that his dismissal was motivated by his political affiliation. Jennings' statements to plaintiff to cease his support of Lobertini, the timing between plaintiff's political activities and his termination, the absence in the record of poor work history on part of the plaintiff, and plaintiff's replacement of less experience and education, evince that the defendants were politically motived to oust Lane from city government. Accordingly, plaintiff's claims cannot be dismissed on grounds that the defendants' reasons for discharging plaintiff were other than for his political affiliation.

  B.  *Policy Making Position*

7

Case 3:05-cv-00127   Document 32   Filed 06/14/06   Page 7 of 17   PageID #: 32

Defendants assert that plaintiff's position as director of recreation is a "policy making" position. Since the Supreme Court issued its opinion in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), patronage dismissals have been, in general, unconstitutional. This rule was clarified in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Although patronage dismissals were generally unconstitutional, a "party affiliation may be an acceptable requirement for some types of government employments." *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294. The *Branti* Court indicated that once the plaintiff made out a *prima facie* case that he or she was discharged because of political affiliation, a defendant must show that the plaintiff's job is of the type that would qualify for an exception to the general rule. *See id.*

In order to determine whether a politically motivated dismissal violates an individual's constitutional rights, the *Branti* Court articulated that the courts must look beyond the mere job title and examine the actual duties of the specific position. *Id.* at 518, 100 S.Ct. at 1295. The *Branti* Court provided guidance as to the types of positions that would qualify for the exception as policymaking positions. *See id.* The Sixth Circuit then systematically fashioned four categories that qualified for the *Branti* exception in *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996). The relevant category applicable to our analysis is category three, defined as "confidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions or

8

confidential advisors."[2] *Id.* at 1557.

In the instant case, the parties dispute the types of duties the plaintiff performed as director of recreation. Although the defendants argue essentially that the plaintiff was a confidential advisor and aided in deciding and implementing policy, Lane argues, citing an employee handbook and personnel polices as well as the city's charter, that other government officials had the discretion and authority to establish policy, enact ordinances, etc. and that his position as city recreation director did not rise to the level of confidential advisor to these government officials. In other words, Lane states that he either did not have, or did not exercise, the type of discretion or authority that one would normally associate with a job subject to patronage dismissal under *Elrod, Branti, and McCloud*.

This Court finds that the defendants have not sufficiently supported their assertion that the plaintiff's former position is a policy making position subject to patronage dismissal. Based on the record before the Court and when viewing the facts most favorably to the plaintiff, it appears that the plaintiff's position does not fall into any of the *McCloud* categories (or in line with policy making exceptions as articulated in *Elrod* and *Branti*). Because the defendants have not shown in the instant matter that a director of recreation position falls under any of the McCloud categories, the Court holds that patronage

---

[2]Category one positions are designated as positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted. *McCloud*, 97 F.3d at 1557. Category two positions are designated as positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the jurisdictional's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions. *Id.*

9

dismissals of city recreation directors with non-policy making duties violates the U.S. Constitution. *See O'Farrell v. Lewiston Town Board*, 1996 WL 189449, at *2 (W.D.N.Y. Apr. 3, 1996) (matter in which a recreation director was discharged on account of political affiliation and the Court denied summary judgement due to the failure of the defense to support a "policy-making position" argument); *Malcak v. Cooney*, 93 F.R.D. 830 (N.D. Ill, 1982) (the Court held that a genuine issue of material fact existed as to whether a director of parks and recreation was a "policy maker"). Accordingly, a question of material fact exist as to whether defendants violated plaintiff's constitutional rights by terminating him for political reasons.

### C.     Qualified Immunity

"[T]he Supreme Court [has] held that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability.'" *Id.* (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)) (internal quotation marks omitted).[3]

---

[3]Qualified immunity shields a defendant from personal liability, but it does not shield a defendant from the claims brought against a defendant in his or her official capacity. The Supreme Court in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), explained this difference between §1983 claims brought against an official in his individual and official capacities:

10

The Court employs a two-step test in reviewing claims for qualified immunity.[4] First, the Court determines whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.* Throughout the analysis, the burden is on the plaintiff to show that the city government officials are not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.").

In regard to the first step, the Court holds that based upon the applicable law, the

---

> When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. In an official capacity action, these defenses are unavailable. The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment.

773 U.S. at 166-67, 105 S.Ct. at 3105-06 (citations omitted). Thus, a plaintiff's official-capacity claim against a defendant survives a grant of qualified immunity that would have disposed of an individual-capacity claim against a defendant.

[4]In addition to the two steps listed above, the Sixth Circuit occasionally considers a third step in the qualified immunity analysis. *See Estate of Carter* v. *City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005). The third step or prong is whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004). In some cases, the three step approach is said to increase the clarity of the proper analysis. *Estate of Carter*, 408 F.3d 311 n.2. However, the case at issue is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable. Thus, to avoid duplicative analysis, this Court chose to collapse the second and third prongs into one prong. *See Caudill v. Hollan*, 431 F.3d 900, 911 n.10 (6th Cir. 2005).

11

facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. The second step involves a more complicated analysis.

The salient question that a court must ask is whether the state of the law at the time the alleged action occurred gave a defendant fair warning that his or her alleged treatment of a plaintiff was unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516,153 L.Ed.2d 666 (2002). Actual notice to the official is irrelevant. *See Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). Qualified immunity is an objective rather than a subjective inquiry. *Id.* In other words, the relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Note, "[o]fficiers can still be on notice that their conduct violates established law even in novel factual circumstances." *See Hope*, 536 U.S. at 741, 122 S.Ct. at 2516. "[I]n light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Defendants Jennings, Fannon, and Hatmaker argue that they are entitled to qualified immunity because the law concerning patronage dismissals of positions similar to a director of recreation position is not clearly established. In this regard and in general, it is of little consequence that the Sixth Circuit has held that a right was not clearly established at an earlier date. *See Hall*, 128 F.3d at 429-30. A right not clearly established previously may become clearly established in the intervening time between a previous case and an instant case. Thus, relying on case law that holds that a right was not clearly established years ago is not conclusive or persuasive. Further, absence of cases directly on point does not

12

mean that the constitutionality of a patronage based discharge has yet to be established. *See Hall*, 128 F.3d at 429. It simply means that this exact issue appears to be novel.

In the recent past, the Sixth Circuit has denied qualified immunity for similarly situated defendants. *See Heggan v. Lee*, 284 F.3d 675, 688 (6th Cir. 2002); *Caudill v. Hollan*, 431 F.3d 900, 907-11 (6th Cir. 2005). Although there appears to be no cases directly on point involving the dismissal of a city recreation director for political affiliation in the Sixth Circuit, this Court holds that previous case law, such as *Hall*, *Heggen*, and *Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 369 (6th Cir. 2002), clearly establishes the constitutional right of a city recreation director not to be dismissed for his political affiliation. A reasonable official in the defendants' positions should have known that patronage dismissals were constitutionally suspect.[5] *McCloud*, *Hall*, *Heggen*, and *Hager*, alone, are enough to find that the rule prohibiting patronage dismissals of recreation directors, as in the instant matter, was clearly established.

Also, in the Court's analysis and of importance, is the language contained in the city's charter and plaintiff's employee handbook and personnel policies. The materials particularly caution the defendants against patronage dismissals. Article VI, Section 1 of the Charter for the City of LaFollette, Tennessee states that the city recreation director was elected by the city council with due regard to their qualifications and fitness and for the

---

[5]This Court does not require a position-specific finding of a previous court to find that the law is clearly established. If that were true, similarly situated county officials could engage in political patronage dismissals at least once with impunity, unless and until a court ruled on the constitutionality of political patronage for that particular position.

13

good of public service without reference to political party affiliation. Further, the Charter states that it shall be unlawful for any candidate for office to give or promise any person, either directly or indirectly, an office, position, employment, benefit, or anything of value for the purpose of influence or obtaining the political support, aid, or vote of any person. Moreover, the employee handbook and personnel policies of the City of LaFollette states that "[n]o person in the service of the City of LaFollette or seeking admission thereto shall be appointed, reduced, removed, or in any way favored or discriminated against because of political opinions or affiliations."

This Court finds that in light of existing legal precedent prohibiting patronage dismissal for non-policy maker positions and in light of the evidence regarding plaintiff's official duties, a reasonable county official should have been on sufficient notice that patronage dismissals were, in general, prohibited. Further, the statements contained in the plaintiff's employment materials and the city's charter solidify the Court's holding that a reasonable official would be on notice that patronage dismissals violate the constitutional rights of county employees in most circumstances. Accordingly, the Court holds that defendants Jennings, Fannon, and Hatmaker are not entitled to qualified immunity.

### D. Official Capacity Claims

Plaintiff has also sued defendants Jennings, Fannon, and Hatmaker in their official capacities. A suit against a person in the official capacity is a suit against the office and not the person. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993). Suits alleging

14

that a city is liable for a constitutional tort brought under §1983 must also allege that the violation resulted from the city's official customs, but a single act may rise to the level of policy or custom. *Id.* at 659. To maintain a suit against defendants Jennings, Fannon, and Hatmaker in their official capacities, plaintiff must show that these city officials had the final authority to establish official policy with respect to the discharging and replacing directors. *See Pembaur v. City of Cinncinnati*, 475 U.S. 469, 483 n. 12, 106 S.Ct.1292, 1300 n. 12 (1986). In that regard, the minutes of city meetings clearly show that the defendants had the authority to dismiss and replace directors. For these reasons, the Court holds that plaintiff claims against the defendants Jennings, Fannon, and Hatmaker in their official capacity shall not be dismissed.

### E. At-Will Employee and Property Rights in Employment

The Court recognizes that Tennessee has long been an at-will employment state. *See Whittaker v. Care-More, Inc.,* 621 S.W.2d 395 (Tenn.Ct.App. 1981); *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 555 (Tenn. 1988). However, in the instant matter, the plaintiff's employee acknowledgment form clearly states that "either the City of LaFollette or [Lane] can terminate the relationship at will, with or without cause, at any time, so long as there is *no violation of applicable federal or state law.*" (emphasis added). Further, the City of LaFollette provided Lane with a policy statement regarding at-will employment. Again, the policy statement provided that the "City of LaFollette . . . will not terminate any employee for reasons that violate State or Federal Law." Lastly, the City of LaFollette's employee handbook and personnel policies regarding political activity states that no person

15

in the service to the City of LaFollette shall be removed or in any way discriminated against because of political opinion or affiliations.

While it is true that plaintiff could have been discharged either for cause or no cause, he could not be discharged for exercising his constitutional rights as permitted by federal law. This issue is tied to the above analysis regarding political affiliation discrimination as well as the analysis regarding policy making positions that permits patronage dismissals.

*F.  Plaintiff's Claims under the Tennessee Constitution*

The City of LaFollette asserts that plaintiff's causes of action for an alleged violation of the Tennessee Constitution should be dismissed in that no such private right is recognized in this state. *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996). Plaintiff concedes that there is no private right of actions recognized by the state for violation of the Tennessee Constitution. Plaintiff reiterates, though, his rights under the U.S. Constitution. Accordingly, defendant City of LaFollette's motion for summary judgment regarding Tennessee Constitution claims will be granted.

## **CONCLUSION**

For the reasons hereinabove set forth, defendants motions for summary judgment [Doc. 19 and Doc. 21] are **GRANTED in part** and **DENIED in part.** Defendant City of

16

LaFollette's motion for summary judgment regarding Tennessee Constitution claims is **GRANTED,** and the remaining grounds for defendants' motions for summary judgment are **DENIED.**

**IT IS SO ORDERED.**

                                        **ENTER:**

                                        s/Thomas W. Phillips
                                        United States District Judge